THOMAS KELLEY, Respondent, *v.* THE FORTY–SECOND STREET, MANHATTANVILLE AND ST. NICHOLAS AVENUE RAILWAY COMPANY, Appellant.

*Negligence — duty of an employer defined.*

In an action to recover for damages claimed to have arisen from the negligence of the defendant, it appeared that a few days before the accident in question the defendant had purchased a force-pump, to be used in applying whitewash to its premises; that the pump had become clogged, and that the plaintiff was sent for to remove a cap from the apparatus in order to put it in working order, and had loosened one of the screws holding the cap in its place when the whitewash was blown into his eyes by the compressed air, causing the injury complained of.

The pump had been manufactured by a company engaged in that business, and had been subjected to the ordinary test to discover whether it was defective, and there was nothing to indicate that the removal of the cap would be attended with any danger.

*Held,* that as there was no cause for apprehension, there was no negligence in omitting to guard against the accident.

That the law exacts from the employer the exercise of reasonable care and intelligence for the safety and protection of the persons employed, and that when such care and intelligence are exercised the happening of what, at most, are only possible accidents, is part of the risk of the employment against which the person employed is required to guard and protect himself.

Appeal by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 1st day of March, 1890, in favor of the plaintiff; and also from an order, entered in said clerk's office on the 28th day of February, 1890, denying defendant's motion for a new trial, after a trial before the court and a jury at the New York Circuit, at which a verdict was rendered in favor of the plaintiff for the sum of $2,250.

The action was brought to recover damages for injuries sustained by the plaintiff through the alleged negligence of the defendant.

*William C. Trull* and *J. Gerald Irwin, Jr.,* for the appellant.

*John Hardy,* for the respondent.

Daniels, J.:

The verdict was recovered for the damages the plaintiff sustained from an injury to and substantial loss of one of his eyes, by an

accident which occurred while he was in the employment of the defendant. He did machinist's work on the running gear of the company's cars. A few days before the accident the company purchased a force pump to be used in applying whitewash to its premises. It had been used for that object when it became clogged or obstructed and the plaintiff was sent for to remove a cap over the apparatus, to permit it to be again placed in working order. And as he was engaged in doing that, and when he had loosened one of the screws holding the cap in its place, the whitewash was blown into his face and eyes by the compressed air, causing the injury which has been made the subject of complaint. The evidence sufficiently tended to prove that the service was being performed under the directions of the defendant's superintendent, to make that a proper question of fact for the jury. And as he seems to have had the entire control and management, under the directors, of the practical part of the company's business, the action might very well be maintained for any want of care, or negligence on his part, producing the accident. The important inquiry, therefore, must be whether there was any want of reasonable care attributable to him in the directions given to the plaintiff to render this service.

The pump was manufactured by a company engaged in that business, and was subjected to the ordinary test to discover whether it was in any respect defective. And it was selected after that for the defendant by a person who had an acquaintance, derived from experience in the use of the same apparatus. There was evidence in the case on the part of the plaintiff that the work on the interior of the pump had not been smoothly finished. But that could only be discovered by taking the pump apart, and that was not done until after the accident. And as the accident itself was not shown to have been caused in any degree by that defect it can form no circumstance of importance in the decision of these appeals.

The proof tended to show that the pump had become obstructed and clogged by so much wet lime passing into it as to prevent the solution from passing through it, and it was necessary to remove the cap to relieve it by the removal of the compound. This, according to the uncontradicted testimony of one of the witnesses, had been done by himself on other occasions with other pumps without the least danger from any explosion of the lime. And there was

nothing whatever at this time indicating that it would be attended with any danger in this instance. Apparently the apparatus was in good condition, and it was in all respects as observable by the plaintiff when he was directed to perform this service as it was by the superintendent, or any other person who was present at the time. The plaintiff himself testified on his cross-examination that there was nothing about the machine that appeared to me, that I could detect, that looked dangerous, or as if the act which I was about to perform would result in danger or injury to me; nothing at all; I didn't know what the machine was; I didn't know there was anything the matter with the machine; it was a new patent machine they were experimenting on ; I did not look at the machine; I was not there long enough to see whether there was any danger or not; I did not inquire as to what the condition of the machine was; I made no inquiry at all. As he observed it, there was nothing to admonish caution, or to suggest inquiry or investigation. ·And the other persons present appear to have been as free from every suspicion of danger as himself.

The witness Guenther had previous experience in the use of the machine for disinfecting purposes, as he stated, in twenty or thirty stables. He was asked, what was the matter with this one, " and said two chances to one the lever got clogged ;  *  *  *  I couldn't say what was the matter with it until the cap was taken off: I have taken off the cap before and I thought it was the proper thing to do." He testified further : " I said the cap must be taken off; to loosen the cap," and then some one went and brought Mr. Kelly. He further stated that he had handled these machines for about four months prior to that time, and had no idea or intimation that there was any danger about it. Nor was any evidence given that there was danger in the removal of the cap, being attended with or followed by an explosion of the contents of the pump. And from this, as well as all the evidence in the case, there was no cause for suspecting injury to the plaintiff in the performance of his work. And there was, therefore, no want of care on the part of the superintendent in not taking precautions to guard against any possible occurrence of the nature of that which took place. As there was no cause for apprehension, there was no negligence in omitting to guard against accidents. What the law exacts

from the employer is the exercise of reasonable care and intelligence for the protection and safety of the persons employed. And when that is observed, the happening of what at most is only a possible accident, is part of the risk of the employment. It is an unforeseen incident of the business against which the person employed is required to guard and protect himself. (*Probst* v. *Delamater*, 100 N. Y., 266; *Webber* v. *Piper*, 109 id., 496.)

The only fact which had come to the knowledge of the superintendent which was not expressly brought to the notice of the plaintiff was that the machine had become obstructed with the whitewash drawn into it. And there is no reason for supposing that his conduct was in the least influenced by the want of that knowledge, since there was no ground for expecting that the forceable expulsion of the whitewash would follow the loosening or removal of the cap. As the evidence disclosed the facts, the charge of negligence on the part of the defendant was not sustained, and the exception taken to the refusal to dismiss the complaint was well founded.

The judgment should be reversed and a new trial ordered, with costs to the defendant to abide the event..

VAN BRUNT, P. J., and BRADY, J., concurred.

Judgment reversed and new trial ordered, with costs to the defendant to abide event.